**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

NATIONAL FAIR HOUSING ALLIANCE, *on behalf of itself and those similarly situated*, and TENNESSEE FAIR HOUSING COUNCIL,

Plaintiffs,

v.

THE DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, SCOTT TURNER, *in his official capacity as Secretary of Housing and Urban Development*,

Defendants.

Case No. 1:25-cv-01965

**PLAINTIFFS' MOTION FOR EXPEDITED PRODUCTION OF THE ADMINISTRATIVE RECORD, LIMITED DISCOVERY, AND EXPEDITED SUMMARY JUDGMENT**

## INTRODUCTION

In their contemporaneously filed Complaint, Plaintiffs challenge the Department of Housing and Urban Development's ("HUD" or "Defendant") refusal to administer and award Congressionally appropriated funds for the Fair Housing Initiatives Program ("FHIP") under the Administrative Procedure Act and the U.S. Constitution.[1] FHIP funds are a critical component of the nation's efforts to ensure that all people have equal opportunity to obtain, use, and enjoy the housing of their choice free from discrimination. The nonprofit organizations funded through the

[1] Consistent with Local Rule 7(m), the undersigned Counsel for Plaintiffs emailed the Deputy Assistant Attorney General and Co-Directors for the Federal Programs Branch at the Department of Justice to confer regarding the contents of this motion at 11:52 a.m. Eastern Time on June 24, 2025. Plaintiffs' counsel did not hear back from government counsel prior to this filing. A copy of the complaint, this motion, and the accompanying exhibits will be emailed to the same government counsel recipients promptly after filing.

FHIP are essential to providing housing services within their communities and HUD's inaction threatens their very existence. Without accelerated action by this Court now, HUD's refusal to distribute FHIP funds will force many organizations to curtail or cease their operations and – without court action before the end of August – the monies appropriated for Fiscal Year 2024 may be lost forever.

For decades, HUD has faithfully followed Congress's command that HUD "shall" use funds appropriated under Section 3616a of the Fair Housing Act ("FHA" or "Act"), 42 U.S.C. § 3601, *et seq.*, to enter into grant agreements with private fair housing organizations that are primarily responsible for enforcing the Act. This year, HUD's practice suddenly changed: HUD has issued no new FHIP grants for FY2024, and it has refused to continue the FY2024 portions of existing multi-year FHIP grants. The funds appropriated for FY2024 must be announced to Congress by August 31, 2025 and obligated by September 30, 2025. Nonetheless, HUD is refusing to act on applications submitted by organizations in November 2024 for new funds and is refusing to take the steps necessary to finalize the funding for the next year of existing multi-year grants.

To minimize the serious harm to Plaintiffs and other impacted organizations and to ensure the funds are processed on the timeline required by Congress, Plaintiffs seek expedited production of the administrative record and limited discovery to ensure that the contours of HUD's administrative action are sufficiently clear for judicial review. Plaintiffs also seek expedited summary judgment to ensure that HUD obeys the law and administers the FY2024 FHIP funds before the funding is moot for some organizations or the ability to use the monies is lost. Due to the pressing need for an expeditious resolution, Plaintiffs respectfully request that the Court order that any response to this motion be filed by June 27, 2025.

## FACTUAL BACKGROUND

Plaintiff National Fair Housing Alliance ("NFHA") is a nonprofit membership organization with two years left in its three-year private enforcement initiative ("PEI") grant under FHIP, for which HUD has refused to finalize FY2024 funding.[2] HUD has also not processed NFHA's, or any other applicant's, education and outreach initiative ("EOI") and fair housing organizations initiative ("FHOI") grant applications submitted in the fall of 2024 in response to HUD's notices of funding opportunities. Plaintiff Tennessee Fair Housing Council ("TFHC") is a nonprofit organization that has previously received fifteen FHIP grants. HUD has not processed its fall 2024 application for a new FHIP PEI grant.

Section 3616a of the FHA directs that HUD "shall" use funds appropriated by Congress for FHIP. Prior to this year, HUD has routinely done so by undertaking a budgeting and planning process, which culminates in its posting of public Notices of Funding Opportunities ("NOFOs") for each fiscal year for which FHIP funding is available. Compl. ¶¶ 36, 37. Eligible fair housing organizations then submit grant applications, Compl. ¶ 40, and following a selection process, HUD assigns and commits funds for the awards. Compl. ¶ 42. The FHA requires HUD to notify Congress of the awards at least thirty days before entering into a grant agreement. *Id.*, 42 U.S.C. § 3616a(e). The parties then agree on specific terms such as a statement of the work that the recipient will do in exchange for the awarded money, and the award is memorialized in an Assistance Award signed by both the recipient and by HUD, referred to as a HUD-1044. Compl. ¶ 44.

---

[2] NFHA seeks to represent a class of similarly situated fair housing organizations with at least one full year left on an active PEI grant but that have been unable to finalize years two and/or three with HUD ("Active PEI Class").

PEI grants are awarded for multi-year periods, subject to future years' appropriations and good performance. For such grants, a HUD-1044 must be finalized for each budget year within the award's period of performance. *Id.* However, applicants do not submit another competitive grant application to receive continuing funds, Compl. ¶ 52, and each year of the continuing grant is funded at the same level, subject to appropriations and compliance with program requirements. Compl. ¶ 53.

For FY2024, Congress appropriated $86,355,000 for "contracts, grants, and other assistance" under Section 3616a. Consolidated Appropriations Act, 2024, Pub. L. No. 118-42, 138 Stat. 370. The Act requires that such funds "remain available until September 30, 2025." *Id.*

Although some organizations have completed the current year of their PEI grant or will do so shortly, HUD has refused to take the necessary steps to begin the subsequent year's funding. Compl. ¶¶ 71–72. Some PEI recipients were instructed by HUD representatives that HUD had told them *not* to finalize continuing years of such grants. Compl. ¶ 71. HUD has also not awarded any new FHIP grants of any kind, despite its publication of FY2024 NOFOs in September 2024 for all grant categories and its acceptance of applications for them last year. Compl. ¶¶ 78, 86. In a typical year, HUD would have announced new FHIP grant recipients by March or April. Compl. ¶¶ 81–82. Many fair housing organizations have completed the work under their current grant years and now are experiencing a gap in FHIP funding that significantly interferes with or completely precludes their ability to continue providing fair housing services in their communities. Compl. ¶¶ 70–73. If HUD fails to announce FY2024 NOFO recipients before August 31, 2025, it may be unable to comply with the requirement in 42 U.S.C. § 3616a(e) to notify Congress of new awards "not less than 30 days" before entering into a grant agreement prior to the September 30, 2025, deadline to obligate FY2024 funds. Compl. ¶ 87.

## ARGUMENT

### I. PLAINTIFFS REQUIRE EXPEDITED PRODUCTION OF THE ADMINISTRATIVE RECORD AND LIMITED DISCOVERY FOR THEIR FORTHCOMING SUMMARY JUDGMENT MOTION

Plaintiffs require expedited discovery and summary judgment processes to ensure a decision on HUD's duty to administer FY2024 funds while such funds are available and before the Plaintiff organizations are forced to cease operations. Plaintiffs seek very limited discovery that will confirm the basis and process for HUD's decision *not* to administer the FHIP program for FY2024. The fact of HUD's decision is apparent from its failure to complete its administrative processes in the normal course to avoid expiration of FY2024 funds and ensure continued funding for recipient organizations. However, the decision has never been formally announced by HUD and may be unwritten. Thus, in addition to the administrative record on which APA review is customarily based, Plaintiffs seek limited discovery to ensure there is a basic record of HUD's decision: the who, what, when and why of the agency action. To do so, Plaintiffs seek three requests for production, one interrogatory and one 30(b)(6) deposition that is narrowly scoped with three topics. *See* Ex. 1, Plaintiffs' Proposed Requests for Production; Ex. 2, Plaintiffs' Proposed Interrogatory; Ex. 3, Plaintiffs' Proposed 30(b)(6) Deposition Notice.

Fed. R. Civ. P. 26(d)(1) permits a court to order expedited discovery so long as such discovery is reasonable. *See Guttenberg v. Emery*, 26 F. Supp. 3d 88, 97 (D.D.C. 2014). Courts in this district generally consider the "reasonableness of the request in light of all of the surrounding circumstances." *Id.* at 98 (quoting *In re Fannie Mae Derivative Litig.*, 227 F.R.D. 142, 142–43 (D.D.C. 2005)). These circumstances include: (1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in

advance of the typical discovery process the request was made. *In re Fannie Mae*, 227 F.R.D. at 143. All of these factors support expedited discovery to facilitate Plaintiffs' forthcoming summary judgment motion.

**a. Pending or Forthcoming Preliminary Injunction Motion**

As detailed below, Plaintiffs seek the functional equivalent of a preliminary injunction motion through an expedited summary judgment motion to prevent unnecessary briefing and promote judicial efficiency. Plaintiffs' proposed briefing schedule would facilitate consideration of their summary motion on a comparably urgent timeline to a preliminary injunction briefing schedule, and their summary judgment motion seeks identical relief as would be sought through a preliminary injunction. *Cf. Morton v. District of Columbia*, 38 F. Supp. 57, 62 (D.D.C. 2014) (converting preliminary injunction motion into motion for summary judgment when resolution of preliminary injunction motion would resolve all issues in the case). Courts have weighed the first factor in plaintiffs' favor as long as the motion was forthcoming and the purpose of expedited discovery was to facilitate resolution of the coming motion. *See, e.g.*, *Legal Tech. Grp., Inc. v. Mukerji*, No. CV 17-631, 2017 WL 7279398, at *3 (D.D.C. June 5, 2017) ("[A]lthough a motion for a preliminary injunction is not yet pending, the very purpose of [plaintiff's] motion for expedited discovery is to support its anticipated motion for a preliminary injunction."); *Am. Fed'n of Lab. & Cong. of Indus. Organizations v. Dep't of Lab.*, No. CV 25-0339 (JDB), 2025 WL 1142495, at *3 (D.D.C. Feb. 27, 2025) ("*AFL-CIO*"), *reconsideration denied*, No. CV 25-339 (JDB), 2025 WL 1129202, at *4 (D.D.C. Mar. 19, 2025).

**b. The Breadth of Discovery and Purpose for Which it is Sought[3]**

Plaintiffs' proposed discovery requests and deposition are limited in number and scope. Plaintiffs seek the administrative record, three document requests, one interrogatory and one deposition pursuant to Fed. R. Civ. P. 30(b)(6). The administrative record typically constitutes the factual record for an APA claim. *See Policy & Research, LLC v. U.S. Dep't of Health & Hum. Servs.*, 313 F. Supp. 3d 62, 74 (D.D.C. 2018). Thus, service of the administrative record is the bare minimum required to resolve Plaintiffs' APA claims.

Plaintiffs' discovery requests are also modest and tailored. The total of five requests are far below the presumptive limits. *See* Fed. R. Civ. P. 30(a)(2)(A)(i); 33(a)(1). The requests are targeted to illuminate the fundamental basis and explanation for HUD's refusal to administer FHIP funding. *See* Ex. 1, Proposed RFP 3 (seeking documents reflecting any decision or decision-making process related to awarding or finalizing grants using FY2024 funds); *Id.*, Proposed RFPs 1 and 2 (seeking documents relied on in making any such decisions); Ex. 2, Proposed Interrogatory (seeking the names of individuals who participated in the challenged agency decisions); *see also AFL-CIO*, 2025 WL 1142495, at *3 (approving of limited discovery for "filling in gaps . . . to determine what the agency actually did") (quoting *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1227 (D.C. Cir. 1993)). Similar to other recent cases where the "contours of the precise policy at issue [were] far from defined," Plaintiffs' requests seek to ensure production of sufficient information to assess the legality of HUD's actions. *AFL-CIO*, 2025 WL 1142495, at *3–4 (expedited request for two interrogatories, a short

[3] Courts routinely combine the third and fourth factors, the breadth and purpose of the discovery requests, and Plaintiffs accordingly do so here. *See New Mexico v. Musk*, No. 25-cv-429 (TSC), 2025 WL 783192, at *3 (D.D.C. Mar. 12, 2025) (noting that these factors are "closely related").

set of document requests, and four depositions were appropriate and tailored to "determining the contours of the agencies' actions"); *New Mexico v. Musk*, No. 25-cv-429 (TSC), 2025 WL 783192, at *1, *7 (D.D.C. Mar. 12, 2025) (expedited request for five requests for document production, six interrogatories, six requests for admission, and two depositions, with minor amendments from the court, were appropriate for claim seeking expedited declaratory and injunctive relief).

**c. How Far in Advance of the Typical Discovery Process**

Plaintiffs seek immediate discovery, prior to responsive pleadings or entry of a standard scheduling order, but this sequence is not unusual given the nature of Plaintiffs' claims. Rule 26 does not require preliminary proceedings when the action is based on the review of an administrative record, which will be the primary basis of the assessment of Plaintiffs' claims here. *See* Fed. R. Civ. P. 26(a)(1)(B)(i), (f)(1) (excluding such cases from initial disclosure and discovery conference requirements). The additional discovery beyond the administrative record seeks to clarify basic details likely missing from the administrative record given HUD's public silence about its actions. Expedited discovery has been approved in light of this factor in APA and analogous cases, to the extent needed to "discern[] the exact nature of the otherwise-opaque administrative action [Plaintiffs] are challenging." *See All. for Retired Americans v. Bessent*, No. 25-cv-0313 (CKK), 2025 WL 1114350, at *3–4 (granting expedited discovery to uncover "exactly what actions Defendants took" with sensitive data); *Musk*, 2025 WL 783192, at *1, *6 (timing of request given little weight in Appointments Clause case where limited discovery was necessary to confirm details of challenged administrative action).

**d. The Burden on Defendants**

Finally, the burden on HUD to comply with the expedited discovery requests is slight. It is already "the agency's responsibility to compile for the court all information it considered either directly or indirectly." *Marcum v. Salazar*, 751 F. Supp. 2d 74, 78 (D.D.C. 2010). Thus, production of the administrative record and materials responsive to Plaintiffs' document requests is routine and expected. And the discovery requests are minimal. *See Attkisson v. Holder*, 113 F. Supp. 3d 156, 165 (finding that "responding to only one or a few discovery requests" is a low burden); *All. for Retired Americans*, 2025 WL 1114350, at *4 (finding that "a written response based on a discrete set of documents within Defendants' control" imposes a relatively slight burden); *AFL-CIO*, 2025 WL 1142495, at *6 (permitting four properly scoped Rule 30(b)(6) depositions in expedited discovery).

* * *

Plaintiffs readily meet the factors necessary to support a request for expedited discovery here and the Court should grant the discovery to allow Plaintiffs to file a fulsome expedited summary judgment motion, which as described next, is necessary to prevent significant irreversible damage.

**II. GOOD CAUSE REQUIRES THIS COURT TO EXPEDITE SUMMARY JUDGMENT BRIEFING; IN THE ALTERNATIVE, THE COURT SHOULD ORDER EXPEDITED BRIEING IN ITS DISCRETION**

This court should expedite summary judgment briefing to facilitate resolution of this case before HUD's August 31 deadline to announce new FY2024 grant recipients expires and the gap in FHIP funds for organizations becomes irreparable. FY2024 FHIP funds may be forever lost if HUD does not quickly act to administer the monies. In the ordinary course, the funds already would have been announced, awarded, and made available for organizations to continue carrying

out the purposes of the Fair Housing Act. *See* Compl. ¶¶ 81–82. This includes now-appropriated funds that have already been set aside for continuing PEI grants that are necessary for those organizations to sustain their operations. *See* Compl. ¶¶ 68–69. Upon granting the request for expedited discovery, the Court will shortly have the administrative record and limited discovery to resolve the legal issues raised by this case.

A district court has broad discretion in scheduling case matters, *McGehee v. U.S. Dep't of Justice*, 362 F. Supp. 3d 14, 18 (D.D.C. 2019), and may set an expedited briefing schedule in its discretion. Moreover, a district court "shall" expedite consideration of any action if good cause is shown. 28 U.S.C. § 1657(a). While "good cause" under Section 1657(a) is analyzed on a case-by-case basis, courts have looked to several factors to guide their analysis, any one of which may be sufficient for a good cause finding. *See Ontario Forest Indus. Assoc. v. U.S.*, 30 C.I.T. 1117, 1127 (2006). These factors include: "[1] [when] failure to expedite would result in mootness or deprive the relief requested of much of its value, [2] [when] failure to expedite would result in extraordinary hardship to a litigant, or [3] [when] the public interest in enforcement of the statute is particularly strong." *Id.* (citing H. Rep. No. 98–985, at 6, *reprinted in* 1984 U.S.C.C.A.N. 5779, 578).

Each "good cause" factor weighs in favor of expediting this case. First, if relief is not swift here, it will have no value. Specifically, if HUD is not compelled to administer the FHIP program with sufficient time to obligate all FY2024 funds, those funds may no longer be available, and the Plaintiff organizations relying on the continuation of existing grants or applied for funds may be forced to cease operations. The relief Plaintiffs seek would then be impossible for HUD to provide – depriving any potential remedy of *all* its value. Because Plaintiffs seek

only declaratory and injunctive relief premised on the FY2024 appropriation, this Court must order such relief before the FY2024 deadlines to provide Plaintiffs with any redress.

Second, without near-term relief, many organizations will have to lay off staff or shut down entirely. For instance, if HUD does not finalize the second or third year of PEI funding that NFHA has been awarded, NFHA will lose $800,000 in funding. Compl. ¶ 99. This potential significant loss of funds has sown budgetary uncertainty and impacted NFHA's ability to perform fair housing-related activities it has begun in reliance on the second years' grant funds. Compl. ¶ 100. Such harm has also deeply affected NFHA's members and other fair housing organizations, many of which cannot financially survive without FHIP funding. Compl. ¶ 103. The Greater Houston Fair Housing Center, a NFHA member that has completed two out of three years of its PEI grant but for which HUD has declined to finalize the third year, was forced to close its programs in May due to the unexpected funding shortfall. Compl. ¶ 106. Other fair housing organizations are similarly in danger and have been forced to stop work, turn away clients, cancel leases, and lay off staff members. Compl. ¶ 103. Absent new FY2024 awards, Plaintiffs and potential class members will be unable to continue or implement critical fair housing initiatives, such as complaint intake and investigation. Compl. ¶¶ 94, 104. NFHA planned to use new FY2024 funds to support the establishment of a new private, full-service fair housing organization and to provide fair housing assistance to North Carolina residents forced to relocate due to Hurricane Helene. Compl. ¶ 102. The harm to TFHC will also be significant. Absent FY2024 funding, TFHC will begin terminating employees at the end of this month and will not be able to help people facing eviction or people with disabilities seeking reasonable accommodations. Compl. ¶¶ 110–111.

Third, there is a strong public interest in ensuring that FHIP is lawfully administered and the FHA is enforced consistent with the will of Congress. Courts have acknowledged the "substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.'" *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (quoting *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994)); *see also Open Cmtys. All. v. Carson*, 286 F. Supp. 3d 148, 179 (D.D.C. 2017) (finding that an injunction requiring HUD to implement a duly promulgated rule by its effective date was in the public interest). This interest is especially salient here, where Defendants' inaction would continue the unlawful impoundment of funds that were appropriated by Congress to serve the American public. *Cf. Nat. Council of Comm. Mental Health Ctrs, Inc. v. Weinberger*, 361 F. Supp. 897, 901 (D.D.C. 1973) (noting that the "failure to commit funds authorized by the Legislature" impacts the "democratic base of our society").

If HUD fails to administer FHIP, it will also undermine the "national policy" of the United States to promote fair housing. 42 U.S.C. § 3601. FHIP was launched with the explicit goal of strengthening FHA enforcement. *See* H.R. Rep. No. 711, 100th Cong., 2d Sess. 16, *reprinted in* 1988 U.S. Code Cong. Admin. News 2173, 2177. FHIP-funded activities have been the cornerstone of fair housing enforcement ever since Congress established FHIP. "[W]ithout FHIP enforcement funding, it is likely that most enforcement and investigatory work . . . would no longer occur." U.S. Department of Housing and Urban Development, Office of Policy Development and Research, *Study of the Fair Housing Initiatives Program* (2011), at iii, available at https://www.huduser.gov/publications/pdf/fhip_2011.pdf. FHIP grantees process approximately 76% of fair housing complaints in the nation. National Fair Housing Alliance, *NFHA 2024 Trends Report* (2024), at 6, available at https://nationalfairhousing.org/wp-

content/uploads/2023/04/2024-Fair-Housing-Trends-Report-FINAL_07.2024.pdf. HUD's failure to administer the program flouts Congress's intent and the public interest in fair housing.

Finally, as discussed in detail above, expedited relief here is particularly appropriate because Plaintiffs' motion may be decided in summary fashion on the administrative record with limited, targeted discovery.

Courts have granted motions for expedited resolution in analogous APA cases. In *Policy & Research, LLC*, an APA case regarding an agency's unlawful failure to continue subsequent years' grant funding, the court resolved summary judgment two months after the complaint was filed. 313 F. Supp. 3d at 71–72.

Plaintiffs' claims are simple: they allege that Congress appropriated FY2024 funds for FHIP, that HUD has a non-discretionary duty to administer the program for any year that funds are appropriated, and that HUD failed to do so—harming Plaintiffs and effectively terminating active PEI grants mid-stream. Because HUD must notify Congress of new FY2024 awards by August 31, and because organizations that reasonably rely on these funds are already suffering harm and are unable to make timely decisions because of HUD's inaction, every passing day risks harm to plaintiffs and the communities they serve. Plaintiffs respectfully request that the Court set an expedited discovery and summary judgment briefing schedule to facilitate a decision before the end of August.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court order any response to this motion be filed by no later than June 27, 2025 and grant their motion for expedited discovery and summary judgment briefing. Plaintiffs propose the following schedule:

- HUD produces the administrative record and other discovery by July 11, 2025;

- Plaintiffs' proposed Motion for Summary Judgment due by July 15, 2025;
- Defendants' Response to Plaintiffs' proposed Motion for Summary Judgment due by July 25, 2025;
- Plaintiffs' Summary Judgment reply brief due July 29, 2025.

A proposed order reflecting the foregoing schedule is filed herewith as Exhibit 4.

Dated: June 24, 2025

Respectfully submitted,

/s/ *Lila Miller*
Lila Miller (DC Bar No. 1643721)
Reed Colfax (DC Bar No. 471730)
Robert Hunter* (DC Bar No. 90031794)
RELMAN COLFAX PLLC
1225 19th Street NW, Suite 600
Washington, DC 20036
Tel: (202) 728-1888
Fax: (202) 728-0848
lmiller@relmanlaw.com
rcolfax@relmanlaw.com
rhunter@relmanlaw.com

*Attorneys for Plaintiffs*

* *Application to D.D.C. pending*