**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| NATIONAL FAIR HOUSING ALLIANCE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, *et al*., <br><br> Defendants. | No. 25-cv-01965-SLS |

**<u>DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF THEIR MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................................ii

TABLE OF AUTHORITIES .......................................................................................................iii

INTRODUCTION .........................................................................................................................1

BACKGROUND ............................................................................................................................2

MOTION TO DISMISS STANDARD..........................................................................................3

ARGUMENT .................................................................................................................................4

   I.    The Court Does Not Have Jurisdiction Over Plaintiffs' Claims........................................4

       A. Plaintiffs' Claims Regarding Potential Future Injury Are Not Ripe.........................4

       B. Plaintiffs Have Not Established Article III Standing. .................................................6

       C. To The Extent They Are Justiciable, Plaintiffs' Claims Belong In The Court Of
         Federal Claims...........................................................................................................7

   II.   Plaintiffs' APA Claims Fail. ...........................................................................................10

       A. Plaintiffs Do Not Seek Review Of Final Agency Action. .......................................11

       B. Plaintiffs Cannot Sue Over Executive Action Committed To Agency Discretion. ..12

   III.  Plaintiffs Have Not Stated A Claim For Violation Of The Appropriations Clause..........14

   IV.  Plaintiffs Have Failed To Show A Separation Of Powers Violation................................15

   V.   Plaintiffs Have Failed To Articulate A Due Process Violation. .......................................16

   VI.  The Court Should Defer Production Of The Administrative Record. ...............................17

CONCLUSION.............................................................................................................................18

# TABLE OF AUTHORITIES

## CASES

*AIDS Vaccine Advoc. Coal. v. Dep't of State*, 770 F. Supp. 3d. 121 (D.D.C. 2025)................... 15

*Albrecht v. Comm. on Emp. Benefits*, 357 F.3d 62 (D.C. Cir. 2004)................................... 7, 8, 10

*Alphapointe v. Dep't of Veterans Affairs*, 745 F. Supp. 3d 1 (D.D.C. 2020) ............................... 8

*Am. Oversight v. U.S. Dep't of Veterans Affs.*, 498 F. Supp. 3d 145 (D.D.C. 2020)................. 3, 7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 4

*Bennett v. Spear*, 520 U.S. 154 (1997) ...................................................................................... 11

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ....................................................................... 5

*City of New Haven v. United States*, 634 F. Supp. 1449 (D.D.C. 1986) .................................... 15

*Clapper v. Amnesty Intern. USA*, 568 U.S. 398 (2013) ............................................................... 4

*Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497 (N.D. Cal. 2017)...................................... 16

*Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099 (D.C. Cir. 2022)............... 7, 8, 9

*Daimler Chrysler v. Cuno*, 547 U.S. 332 (2006) ......................................................................... 6

*Dep't of Educ v. California*, 145 S. Ct. 966 (2025)..................................................................... 10

*Diaz v. Neighbors Consejo*, 77 F. Supp. 3d 227 (D.D.C. 2015).................................................... 4

*FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024) ....................................................... 14, 15

*Franklin v. Massachusetts*, 505 U.S. 788 (1992)........................................................................ 11

*Franklin-Mason v. Mabus*, 742 F.3d 1051 (D.C. Cir. 2014) ........................................................ 7

*FTC v. Std. Oil Co.*, 449 U.S. 232 (1980)................................................................................... 11

*Gizzo v. Ben-Habib*, 44 F. Supp. 3d 374 (S.D.N.Y. 2014) ........................................................ 16

*Haaland v. Brackeen*, 599 U.S. 255 (2023)................................................................................ 15

*Heckler v. Chaney*, 470 U.S. 821 (1985) ................................................................................... 13

*Hettinga v. United States*, 677 F.3d 471 (D.C. Cir. 2012)........................................................... 4

*Ingersoll-Rand Co. v. United States*, 780 F.2d 74 (D.C. Cir. 1985)............................................ 8

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Donovan*,
746 F.2d 855 (D.C. Cir. 1984) .................................................................................. 13

*Janay v. Blinken*, 743 F. Supp. 3d 96 (D.D.C. 2024). ................................................ 15

*Keepseagle v. Vilsack*, 815 F.3d 28 (D.C. Cir. 2016) ................................................. 3

*Kidwell v. Dep't of Army, Bd. for Corr. of Mil. Recs.*, 56 F.3d 279 (D.C. Cir. 1995)................... 9

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) ............................... 7

*Lance v. Coffman*, 549 U.S. 437 (2007) ............................................................. 14, 15

*Lincoln v. Vigil*, 508 U.S. 182 (1993) .................................................................... 13

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)....................................................... 4

*Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990) ..................................... 12

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209 (2012) ...... 7

*Megapulse, Inc. v. Lewis*, 672 F.2d 959 (D.C. Cir. 1982) ....................................... 8, 9

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803 (2003)................................ 5

*New Vision Photography Program, Inc. v. District of Columbia*,
54 F. Supp. 3d 12 (D.D.C. 2014) ............................................................................ 17

*Norton v. S. Utah Wilderness All.*, 542 U.S. 55 (2004) ............................................ 12

*Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414 (1990) ........................................... 14

*Oregon Nat. Desert Ass'n. v. U.S. Forest Serv.*, 465 F.3d 977 (9th Cir. 2006)...................... 11

*Perry Capital LLC v. Mnuchin*, 864 F.3d 591 (D.C. Cir. 2017)............................. 7, 8, 9

*Perry v. Sindermann,* 408 U.S. 593 (1972).......................................................... 16

quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002)..................... 10

*Redondo-Borges v. U.S. Dep't of Hous. & Urb. Dev.*, 421 F.3d 1 (1st Cir. 2005)...................... 16

*S & D Maintenance Co. v. Goldin*, 844 F.2d 962 (2d Cir. 1988) ................................ 17

*Shaffer v. Veneman*, 325 F.3d 370 (D.C. Cir. 2003)................................................. 8

*South Dakota v. Dole*, 483 U.S. 203 (1987) ........................................................... 16

*Spokeo v. Robins,* 578 U.S. 330 (2016) ................................................................. 6

*Town of Castle Rock v. Gonzalez*, 545 U.S. 748 (2005)........................................... 16

*Transohio Sav. Bank v. Dir., Office of Thrift Supervision*,
967 F.2d 598 (D.C. Cir. 1992) ............................................................................... 8

*Trump v. New York*, 592 U.S. 125 (2020) ........................................................... 4, 5

## STATUTES

28 U.S.C. § 1491 ....................................................................................................... 8

5 U.S.C. § 701 ......................................................................................................... 13

5 U.S.C. § 702 ....................................................................................................... 7, 8

5 U.S.C. § 704 ......................................................................................................... 12

## RULES

D.D.C. L.R. 7(n) ..................................................................................................... 17

Fed. R. Civ. P. 12(b)(1) ....................................................................................... 3, 10

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 4

Fed. R. Civ. P. 12(h)(3) ........................................................................................... 4

## CONSTITUTIONAL PROVISIONS

U.S. Const. art. I, § 8, cl. 1 .................................................................................... 15

U.S. Const. art. I, § 9, cl. 7 .................................................................................... 14

**INTRODUCTION**

Plaintiffs—two non-profit organizations—seek to control the Department of Housing and Urban Development's ("HUD") administration of grants under the Fair Housing Initiatives Program ("FHIP"). Plaintiffs speculate that HUD will fail to administer the grant programs before the end of the fiscal year, resulting in a lapse of appropriated funds. Based primarily on comparisons to HUD's past practice, Plaintiffs submit that HUD has taken too long to administer FHIP grant funds and therefore that it is likely that the agency will fail to do so altogether. Based on this conjecture and despite the months left before the end of the fiscal year, Plaintiffs would have this Court impose extraordinary relief *now*, including a declaration that HUD has unlawfully refused to administer funds and a mandate that HUD administer all FHIP grants.

Plaintiffs' suit fails for several reasons. First, the Court does not have subject-matter jurisdiction over Plaintiffs' claims. As an initial matter, Plaintiffs' claims are not ripe. Because HUD's grant administration process is ongoing, it is impossible to evaluate Plaintiffs' claims. Indeed, Plaintiffs have not established that any existing grant awards have been withheld or modified, or that future grant awards have been unlawfully restricted. Similarly, Plaintiffs have failed to identify any concrete and particularized injury stemming from HUD's actions with respect to any grant program. But even if Plaintiffs' claims were justiciable, they must be heard by the Court of Federal Claims because they are fundamentally actions sounding in contract.

Second, Plaintiffs have failed to assert any violations of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. Plaintiffs have not identified any discrete, final agency action redressable under the APA. Their attempt to prohibit HUD from taking future action is not sufficiently tethered to any agency action that marks the consummation of HUD's decision-making process and that triggers rights or obligations. Any grievance with the timing of HUD's grant decisions is not actionable because it is merely a disagreement with HUD's administration of grant programs, which is a process imbued with discretion.

Finally, Plaintiffs' constitutional claims fail for similar reasons. Plaintiffs' generalized disagreement with the manner in which HUD is presently administering FHIP grant programs is

1

not sufficient to establish that any constitutional violation has occurred.  Any suggestion that funds will be impounded at the end of the fiscal year is unsupported and cannot form the basis for any constitutional claims, let alone warrant the extraordinary relief Plaintiffs seek, effectively asking this Court to superintend HUD's grant administration process.

In short, the Complaint should be dismissed because this Court does not have jurisdiction over Plaintiffs' claims and Plaintiffs have failed to state a claim upon which relief may be granted.  Because these issues may be resolved as a matter of law and given the expedited nature of this briefing, Defendants request relief from Local Rule 7(n), which would require production of the administrative record alongside this motion.

## BACKGROUND

This case concerns HUD's administration of various FHIP grant programs.  Plaintiffs claim that if HUD fails to administer these grant programs before September 30, 2025—the end of the fiscal year—the funds will lapse, thereby impacting grant programs upon which they rely. Compl. ¶ 1.

First, Plaintiffs challenge HUD's administration of the second and third years of multi-year Private Enforcement Initiative ("PEI") grants.  *Id.*  ¶ 6.  In September 2024, HUD earmarked $31.7 million of the FY2024 appropriations for multi-year PEI grant programs first awarded in FY2022 and FY2023.  *Id.* ¶ 65.  Plaintiffs claim that "[d]espite this announcement, HUD has refused to administer or implement these ongoing grants."  *Id.* ¶ 68.  Specifically, Plaintiffs allege that HUD has "refused to negotiate" the "required HUD-1044 contracts for upcoming years of active PEI grants."  *Id.* ¶ 70.  Plaintiffs claim that HUD's actions to date suggest that HUD will not administer the PEI grants before the end of the fiscal year and that the appropriated funds will lapse, resulting in an impoundment of appropriated funds.  *See id.* ¶ 74.

Second, Plaintiffs challenge HUD's administration of FY2024  Notice of Funding Opportunities ("NOFO")—essentially solicitations—for Education and Outreach Initiative ("EOI") grants, Fair Housing Initiatives Program ("FHOI") grants, and new PEI grants.  *Id.* ¶¶

76–78.  Plaintiffs claim that "[i]n recent years, when HUD has posted NOFOs announcing the availability of funds for new FHIP grants in the fall, it has promptly made awards and announced recipients in the early spring."  *Id*. ¶ 81.  Plaintiffs allege that because HUD has yet to announce or issue new grants under the FY2024 NOFOs, this suggests that that HUD will not finalize the NOFOs and issue the associated grants before the end of the fiscal year and that the appropriated funds will lapse, resulting in impoundment.  *See id*. ¶¶ 86–90.

Based on the conjecture that HUD may not administer FHIP grant programs before the end of the fiscal year, Plaintiffs assert five causes of action: (1) Count I—APA § 706(1) violation for unlawful withholding or unreasonable delay stemming from "HUD's refusal to administer FHIP grants," *id*. ¶¶ 117–22; (2) Count II—APA § 706(2) violation for actions that are contrary to law due to "HUD's refusal to administer FHIP grants," *id*. ¶¶ 123–29; (3) Count III—violation of the Appropriations Clause due to HUD's "unlawful of impoundment of congressionally appropriated funds," *id*. ¶¶ 130–34; (4) Count IV—violation of separation of powers due to HUD's "unlawful of impoundment of congressionally appropriated funds," *id*. ¶¶ 135–38; and (5) Count V—violation of the Fifth Amendment Due Process Clause due to "HUD's refusal to negotiate second and third-year PEI contracts," *id*. ¶¶ 139–46.  Plaintiffs seek declaratory and injunctive relief to, among other things, require HUD's administration of FHIP grant programs before September 30, 2025.  *Id*. at 34.

## MOTION TO DISMISS STANDARD

Federal courts "are courts of limited jurisdiction," and "[i]t is axiomatic that a court must have jurisdiction before it can hear any argument on the merits."  *Keepseagle v. Vilsack*, 815 F.3d 28, 32, 36 (D.C. Cir. 2016) (citation omitted).  Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move to dismiss a complaint for "lack of subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  A "facial" challenge to a court's jurisdiction, like the one Defendants bring here, "contests the legal sufficiency of the jurisdictional allegations contained in the complaint." *Am. Oversight v. U.S. Dep't of Veterans Affs.*, 498 F. Supp. 3d 145, 152 (D.D.C. 2020).  The court must accept such factual allegations as true and "construe 'the complaint in the light most

favorable to the non-moving party.'" *Id.* (citation omitted).  And if those allegations fail to

establish that the court has jurisdiction, "dismissal is required as a matter of law." *Diaz v.

Neighbors Consejo*, 77 F. Supp. 3d 227, 229 (D.D.C. 2015); *see* Fed. R. Civ. P. 12(h)(3).

Moreover, to withstand a motion to dismiss for failure to state a claim, *see* Fed. R. Civ. P.

12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim

for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation

omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Id.*  "[N]or must [a] court accept legal conclusions cast

as factual allegations." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012).  Rather, a

court must disregard "pleadings that, because they are no more than conclusions, are not entitled

to the assumption of truth" and determine whether the remaining "well-pleaded factual

allegations . . . plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

## ARGUMENT

### I.    The Court Does Not Have Jurisdiction Over Plaintiffs' Claims.

#### A.  Plaintiffs' Claims Regarding Potential Future Injury Are Not Ripe.

Plaintiffs claim that "HUD's refusal to implement existing PEI grants and to administer

the FY2024 NOFOs risk the complete loss of appropriated funds" because funds "that are not

obligated by September 30, 2025 will lapse and cease to be available."  Compl. ¶ 11.  This

allegation is based on Plaintiffs' speculation that HUD will not administer the subject grant

projects before the end of the fiscal year.  *See id*. ¶¶ 72–74, 85–87.  However, Article III requires

that an alleged injury be "certainly impending." *Clapper v. Amnesty Intern. USA*, 568 U.S. 398,

409 (2013) (emphasis omitted) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 n.2

(1992)).  A claim is not ripe if it is "dependent on 'contingent future events that may not occur as

anticipated, or indeed may not occur at all.'" *Trump v. New York*, 592 U.S. 125, 131 (2020)

(citation omitted).  "Determining whether administrative action is ripe for judicial review

requires [courts] to evaluate (1) the fitness of the issues for judicial decision and (2) the hardship

to the parties of withholding court consideration." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*,

538 U.S. 803, 808 (2003) (citation omitted).

First, Plaintiffs state that finalized HUD-1044 forms (with attachments including the statement of work) and grant agreements are required for the second and third years of three-year PEI grants to ensure that funds for those years are administered before they lapse.  Compl. ¶¶ 6–7, 70.  Plaintiffs allege that HUD will not execute the second- and third-year HUD-1044 forms and grant agreements before the end of the fiscal year, "effectively impounding these funds."  *Id.* ¶ 70.  Plaintiffs' claims stemming from the possibility that HUD will not negotiate HUD-1044 forms and grant agreements before the end of the fiscal year and from the speculation that this will lead to impoundment within several months are not ripe because they are "no more than conjecture."  *Trump*, 592 U.S. at 131 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 108 (1983)).  There are several months before the end of the fiscal year and Plaintiffs' allegations do not establish that HUD lacks sufficient time to administer the subject PEI grants in the remaining time.  Accordingly, Plaintiffs' speculative claims are not ripe.

Second, Plaintiffs state that HUD issued NOFOs for various grant programs in September 2024, and that under ordinary circumstances, selected grantees should have begun performance by April 2025.  Compl. ¶¶ 77–78, 82.  Plaintiffs allege that HUD's failure to conform with ordinary practice is indicative that the agency will not take action under the FY2024 NOFOs before the associated funds lapse at the end of the fiscal year.  *Id.* ¶¶ 85–87.  Again, Plaintiffs' claims are merely speculation about potential future action.  Indeed, neither the 2024 Consolidated Appropriations Act, Pub. L. 118–42, nor the FHIP program, 42 U.S.C. § 3616a, require that HUD administer NOFOs on the earlier timeline Plaintiffs desire or that a new presidential administration forgo aligning HUD's grant-making process with the new administration's priorities.  As with the existing PEI grants, Plaintiffs' allegation as to new PEI awards—that HUD so far has not moved as fast as Plaintiffs would like—does not establish that HUD lacks sufficient time to administer these awards before the end of the fiscal year.  Because HUD's decision-making process is still ongoing, Plaintiffs' claims are not ripe for judicial resolution.  It is unclear what the Court would be assessing, how, and on what grounds, as well

as what relief it could grant.  As a result, Plaintiffs' speculation about future harm stemming from the possibility that HUD may not administer funds by September 30, 2025 is insufficient to establish a case or controversy as required by Article III and cannot form the basis for the Court's jurisdiction.

### B.  Plaintiffs Have Not Established Article III Standing.

Under Article III, Plaintiffs must establish an injury that is concrete, particularized, and imminent rather than "conjectural or hypothetical," *Spokeo v. Robins,* 578 U.S. 330, 339 (2016) (citations omitted), for each claim and for each form of relief they seek, *Daimler Chrysler v. Cuno*, 547 U.S. 332, 352 (2006).  And for each type of relief requested, Plaintiffs must show that relief will in fact redress their injury.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998).  Plaintiffs claim that "HUD is flouting its obligation to administer" grant programs and is refusing "to spend funds that Congress has appropriated."  Compl. ¶ 1.  Plaintiffs ask that the Court (1) "[e]nsure all outstanding FY2024 FHIP funds are obligated before September 30"; (2) "[i]mplement the second and third years of [] Plaintiffs' ongoing PEI awards"; and (3) "[i]ssue and finalize contracts for the FY2024 NOFOs[.]"  *Id*. at 34.  Plaintiffs assert that they are entitled to that relief now because HUD may not administer the grant programs by September 30.  But Plaintiffs have not yet suffered any injury because none of the identified grant programs have been concretely impacted.

For the same reasons that Plaintiffs' claims are not ripe, Plaintiffs lack standing. Plaintiffs cannot assert a concrete, particularized, imminent injury with respect to any grant program because HUD has not taken action to withhold any funding.  Plaintiffs' hypothetical injury—that HUD *may* in the future withhold funds appropriated by Congress—is too speculative for this Court to adjudicate or redress at this time.  Specifically, it is too early to meaningfully assess the merits of any specific alleged future violation and injury.

Plaintiffs' alleged financial uncertainty is insufficient to establish a present, concrete injury.  For example, Plaintiff NFHA claims that it has suffered "budgeting confusion and lack of clarity" as it "evaluate[s] whether it may continue its planned work."  Compl. ¶ 100.  Plaintiff

NFHA states that *if* HUD does not administer grants, NFHA will be unable to provide certain housing services. *Id.* ¶ 102. Similarly, Plaintiff TFHC states that the unavailability of grant funds would alter its operations and *may* force the organization to close. *Id.* ¶ 113. But Plaintiffs ask the Court to weigh in on funding decisions that have not been finalized. Because HUD's grant administration process is ongoing, any relief would be predictive and advisory, as opposed to remedial. Plaintiffs' failure to establish a concrete injury is fatal and the Complaint, therefore, fails.

### C. To The Extent They Are Justiciable, Plaintiffs' Claims Belong In The Court Of Federal Claims.

At the motion-to-dismiss stage, "[t]he plaintiff bears the burden of establishing" a court's "jurisdiction." *Am. Oversight*, 498 F. Supp. 3d at 152 (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)); *see Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 603 (D.C. Cir. 2017) ("Before delving into the merits, we pause to assure ourselves of our jurisdiction, as is our duty."). To "bring a claim against the United States," the plaintiff must "identify an unequivocal waiver of sovereign immunity." *Franklin-Mason v. Mabus*, 742 F.3d 1051, 1054 (D.C. Cir. 2014); *see Perry Capital*, 864 F.3d at 619 (noting that sovereign immunity is "jurisdictional in nature"). Plaintiffs here assert claims under the APA, *see* Compl. at 30–31, which "provide[s] a limited waiver of sovereign immunity for claims against the United States 'seeking relief other than money damages' for persons 'adversely affected or aggrieved by agency action.'" *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1105 (D.C. Cir. 2022) (quoting 5 U.S.C. § 702). "But even for claims that are not for money damages, the APA confers no 'authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.'" *Albrecht v. Comm. on Emp. Benefits*, 357 F.3d 62, 67 (D.C. Cir. 2004) (quoting 5 U.S.C. § 702). This "important carveout" to the APA's sovereign immunity waiver "prevents plaintiffs from exploiting" that waiver "to evade limitations on suit contained in other statutes." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012). And here, Plaintiffs' attempt to use

the APA to compel the federal government to administer grant programs is "impliedly

forbid[den]," 5 U.S.C. § 702, by the Tucker Act.

The Tucker Act provides in relevant part that "[t]he United States Court of Federal

Claims shall have jurisdiction to render judgment upon any claim against the United States

founded . . . upon any express or implied contract with the United States."  28 U.S.C. §

1491(a)(1).  The D.C. Circuit has "interpreted the Tucker Act . . . to 'impliedly forbid[]' contract

claims against the Government from being brought in district court under . . . the APA." *Perry*

*Capital*, 864 F.3d at 618–19 (citing *Albrecht*, 357 F.3d at 67–68); *see Shaffer v. Veneman*, 325

F.3d 370, 373 (D.C. Cir. 2003) ("[T]his Court and others have interpreted the Tucker Act as

providing the *exclusive* remedy for contract claims against the government, at least *vis a vis* the

APA." (quoting *Transohio Sav. Bank v. Dir., Office of Thrift Supervision*, 967 F.2d 598, 609

(D.C. Cir. 1992)); *Crowley*, 38 F.4th at 1106.  Thus, regardless of how a claim is styled, a district

court lacks jurisdiction over that claim if it "is in 'its essence' contractual." *Perry Capital*, 864

F.3d at 619 (quoting *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982)); *see*

*Albrecht*, 357 F.3d at 67 ("[T]he district court lacks jurisdiction if [the plaintiff's] claim is

essentially a contract action.").  That jurisdictional barrier ensures that contract claims against

the federal government are channeled into a court "that possesses expertise in questions of

federal contracting law," *Alphapointe v. Dep't of Veterans Affairs*, 745 F. Supp. 3d 1, 11 (D.D.C.

2020), and it respects Congress's deliberate choice to limit the remedies available for such

claims, *see Megapulse*, 672 F.2d at 971 (recognizing that a plaintiff "cannot maintain a contract

action in either the district court or the Court of Claims seeking specific performance of a

contract").  *See also Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 78 (D.C. Cir. 1985)

("[W]e must implement the congressional intent to provide a single, uniquely qualified forum for

the resolution of contractual disputes.").

Determining whether a claim "is 'at its essence' contractual"—and therefore falls outside

of the APA's waiver of sovereign immunity—"depends both on the source of the rights upon

which the plaintiff bases its claims, and upon the type of relief sought (or appropriate)."

*Crowley*, 38 F.4th at 1106 (quoting *Megapulse*, 672 F.2d at 968).  In examining the "source of the rights" prong, the D.C. Circuit has "rejected the 'broad' notion 'that any case requiring some reference to or incorporation of a contract is necessarily on the contract and therefore directly within the Tucker Act.'"  *Id.* at 1107 (quoting *Megapulse*, 672 F.2d at 1107).  But the court has also warned that plaintiffs cannot avoid the Tucker Act and its jurisdictional consequences by artfully crafting a complaint to disguise what is essentially a contract claim as a claim for equitable relief under a separate legal authority.  *See id.*; *Kidwell v. Dep't of Army, Bd. for Corr. of Mil. Recs.*, 56 F.3d 279, 284 (D.C. Cir. 1995); *see also Megapulse*, 672 F.2d at 969–70 ("This court retains the power to make rational distinctions between actions sounding genuinely in contract and those based on truly independent legal grounds.").  A court must therefore consider, among other factors, whether "the plaintiff's asserted rights and the government's purported authority arise from statute"; whether "the plaintiff's rights 'exist[] prior to and apart from rights created under the contract'"; and whether "the plaintiff 'seek[s] to enforce any duty imposed upon' the government 'by the . . . relevant contracts to which' the government 'is a party.'"  *Crowley*, 38 F.4th at 1107 (citation omitted).

The second prong "considers 'the type of relief sought.'"  *Id.* (quoting *Megapulse*, 672 F.2d at 968).  Money damages and specific performance are "explicitly contractual remed[ies]," for instance.  *Perry Capital*, 864 F.3d at 619.  The D.C. Circuit has recently explained, moreover, that "the crux of" this relief-focused inquiry "boils down to" whether the plaintiff, "in whole or in part, . . . explicitly or 'in essence' seeks more than $10,000 in monetary relief from the federal government."  *Crowley*, 38 F.4th at 1107 (quoting *Kidwell*, 56 F.3d at 284).  Although a plaintiff does not necessarily seek monetary relief "merely because . . . success on the merits may obligate the United States to pay the complainant," as with the "source of the rights" prong, a plaintiff cannot avoid the Tucker Act's jurisdictional consequences by "converting" through creative pleading what is essentially a claim for money damages into one "requesting injunctive relief or declaratory actions."  *Kidwell*, 56 F.3d at 284.  In assessing the type of relief a plaintiff seeks, a court must accordingly "look to the complaint's substance, not merely its form."  *Id.*

And a plaintiff's request for injunctive or declaratory relief is truly non-monetary only if that requested relief "has 'considerable value' independent of any future potential for monetary relief." *Id.*

Plaintiffs' APA claims should be dismissed because, as the Supreme Court recently confirmed, this Court lacks jurisdiction under the APA "to enforce contractual obligation[s] to pay money" against the federal government. *Dep't of Educ v. California*, 145 S. Ct. 966, 968 (2025) (per curiam) (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)). Plaintiffs' requested relief—an order to "obligate[]" funds in performance of grant contracts and to "[i]ssue awards and finalize contracts," Compl. at 34—is contractual in nature. Like the *Department of Education* plaintiffs, Plaintiffs seek relief based upon a grant award; they have no statutory or constitutional right to such funding. Like the *Department of Education* plaintiffs, Plaintiffs assert a challenge under the APA, including on the ground that the agency action is arbitrary and capricious. And like the district court in *Department of Education*, this Court too "lack[s] jurisdiction . . . under the APA" to compel Defendants "to pay money" under the grant awards. *Dep't of Educ.*, 145 S. Ct. at 968. The theories of standing and relief that Plaintiffs assert hinge entirely on contractual routing of funding to them as provided in grant agreements. This doctrine should, at a minimum, apply to the existing multi-year PEI grant contracts. Accordingly, the equitable relief they request is inseparable from their contractual claims and requires that the claims be adjudicated by the Court of Federal Claims. Because this Court lacks jurisdiction "to enforce" Defendants' "contractual obligation[s] to pay money," *Dep't of Educ.*, 145 S. Ct. at 968, or to otherwise resolve claims against the federal government that are "essentially" contractual, *Albrecht*, 357 F.3d at 68, Plaintiffs' claims should be dismissed. *See* Fed. R. Civ. P. 12(b)(1).

## II.  Plaintiffs' APA Claims Fail.

Even if Plaintiffs had sufficiently established subject-matter jurisdiction—which they have not—they have failed to state any APA claims upon which relief may be granted.

**A.  Plaintiffs Do Not Seek Review Of Final Agency Action.**

Agency action is final only if two conditions are met: (1) the agency action marks "the 'consummation' of the agency's decisionmaking process"—it must not be of a merely tentative or interlocutory nature, and (2) the "action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences flow.'"  *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations omitted).  *Both* conditions must be satisfied for agency action to be considered "final" under the APA.  *Id.* at 175.

Courts "look to whether the action 'amounts to a definitive statement of the agency's position' or 'has a direct and immediate effect on the day-to-day operations' of the subject party, or if 'immediate compliance [with the terms] is expected.'"  *Oregon Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) (alteration in original) (citation omitted).  For example, in *Federal Trade Commission v. Standard Oil Company of California*, the Supreme Court held that the Federal Trade Commission's issuance of a complaint averring there was "reason to believe" that a party was in violation of the Federal Trade Commission Act was insufficient to satisfy the finality requirement.  *FTC v. Std. Oil Co.*, 449 U.S. 232, 239, 243 (1980).  The Supreme Court explained that "reason to believe" was merely a determination that adjudicatory proceedings would begin, and the actual issuance of the complaint was sufficient only to initiate the proceedings.  *See id.* at 242.  The complaint had no effect on the daily operations of defendant's business, nor did it legally compel a party to do something or refrain from doing something.  *See id.*; *see also Franklin v. Massachusetts*, 505 U.S. 788, 798 (1992) (finding no final agency action where "the Secretary's report to the President carries no direct consequences for the reapportionment, it serves more like a tentative recommendation than a final and binding determination").

Here, Plaintiffs do not challenge any final action taken by HUD.  Rather, Plaintiffs seek to prohibit HUD from taking future action that could impact their federal funding.  For example, Plaintiffs allege that based on discussions with HUD representatives, they have reason to believe that HUD will not negotiate HUD-1044 forms and grant agreements for second- and third-year

11

PEI awards.  Compl. ¶ 70.  Plaintiffs also claim that HUD's failure to conform with its ordinary timeline for NOFOs administration suggests that it will not take any action before funds lapse. *Id*. ¶¶ 85–89.  Allegations that HUD did not take action at an earlier point in time do not establish that HUD has made a final decision not to take action at all prior to the end of the fiscal year.

Moreover, the "agency action" requirement articulated in *Bennett* precludes "broad programmatic attack[s]" on an agency's administration of a program.  *Norton v. S. Utah Wilderness All*., 542 U.S. 55, 64 (2004).  In *Lujan v. National Wildlife Federation*, the Supreme Court emphasized that § 702 only allows for review of "'identifiable' agency action," and that the APA requires challenge to agency action on a "case-by-case" basis, rather than pursuing "wholesale improvement of [an agency] program by court decree." 497 U.S. 871, 890–94 (1990) (emphasis omitted). The Court's prohibition on programmatic challenges was motivated by institutional limits on Article III courts, which constrain their review to narrow and concrete actual controversies. *See id.* at 891–94. Thus, absent a discrete and final agency action, federal courts cannot review a general program or policy. *See Norton*, 542 U.S. at 64 ("The limitation to discrete agency action precludes the kind of broad programmatic attack we rejected in *Lujan*[.]").

Here, Plaintiffs challenge HUD's administration of the FHIP grant program.  However, because no funding has yet been impacted, their suit cuts at the heart of anticipated, programmatic changes, which are squarely precluded from APA review.  *See* 5 U.S.C. § 704. Plaintiffs have not demonstrated that HUD has issued any decision to terminate Plaintiffs' funding under an existing grant award or not to award future grant funding made available under the FY2024 NOFOs.  Plaintiffs' conjecture about HUD's program administration is not actionable under the APA.  Therefore, Plaintiffs have failed to state a claim upon which any relief can be granted, and their APA claims must be dismissed.

### B.  Plaintiffs Cannot Sue Over Executive Action Committed To Agency Discretion.

As a general matter, agencies have broad discretion in administering grants.  In *Lincoln v. Vigil*, the Supreme Court explained that the "allocation of funds from a lump-sum appropriation

is" an "administrative decision traditionally regarded as committed to agency discretion,"
because the "very point of a lump-sum appropriation is to give an agency the capacity to adapt to
changing circumstances and meet its statutory responsibilities in what it sees as the most
effective or desirable way."  508 U.S. 182, 192 (1993).  In such circumstances, it is squarely
within an agency's discretion to determine whether to fund any specific program at all to meet
permissible statutory objectives.  *Id.* at 193.  "Congress may always circumscribe agency
discretion to allocate resources by putting restrictions in the operative statutes."  *Id.*  So long as
the agency abides by the relevant statutes, the APA "gives the courts no leave to intrude."  *Id.*

  Plaintiffs' APA claims fail because they seek to challenge decisions quintessentially
"committed to agency discretion by law," for which the APA does not provide an avenue for
review.  5 U.S.C. § 701(a)(2).  An agency's determination of how best to administer appropriated
funds to fulfill its legal mandates is classic discretionary agency action.  *See Lincoln*, 508 U.S. at
193.  Indeed, none of the grant programs are funded through targeted appropriations, but rather
through the lump-sum appropriations that HUD receives from Congress.  Compl. ¶ 56.  As
*Lincoln* made clear, HUD's "allocation of funds" from those lump-sum appropriations to various
programs and priorities "requires 'a complicated balance of a number of factors,'" including
whether the agency's "'resources are best spent' on one program or another," and "whether a
particular program 'best fits the agency's overall policies.'"  *Lincoln*, 508 U.S. at 193 (quoting
*Heckler v. Chaney*, 470 U.S. 821, 831 (1985)).  Any decisions regarding HUD's administration
of the grant programs, including interim steps and timing, are squarely committed to agency
discretion.  *See Lincoln*, 508 U.S. at 193–94; *see also Int'l Union, United Auto., Aerospace, &
Agric. Implement Workers of Am. v. Donovan*, 746 F.2d 855, 861 (D.C. Cir. 1984) (Scalia, J.)
("A lump-sum appropriation leaves it to the recipient agency (as a matter of law, at least) to
distribute the funds among some or all of the permissible objects as it sees fit.").  Defendants'
funding administration decisions are "accordingly unreviewable under § 701(a)(2)" of the APA
and cannot form the basis for Counts I and II of the Complaint.  *Lincoln*, 508 U.S. at 193.

### III.    Plaintiffs Have Not Stated A Claim For Violation Of The Appropriations Clause.

Plaintiffs allege that because "HUD's unlawful impoundment of congressionally appropriated funds infringes on Congress's exclusive power over the federal purse," the Court "can compel HUD to abide by the [Appropriations Clause] by obligating and/or expending appropriated funds." Compl. ¶¶ 133–34. The thrust of Plaintiffs' Appropriations Clause claim appears to be that Defendants' administration of FHIP grants effectively amounts to an allegedly unlawful withholding of funds appropriated for certain programs that Congress requires HUD to administer. *Id.* ¶ 133. Even taking at face value Plaintiffs' suggestion that HUD will fail to administer the grant programs before the end of the fiscal year, potentially leading to an impoundment, Plaintiffs nonetheless fail to allege a viable unlawful-withholding claim.

The Appropriations Clause simply provides that "[n]o money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." U.S. Const. art. I, § 9, cl. 7. "In other words," the Clause generally concerns whether a certain "payment of money from the Treasury" is "authorized by statute." *Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 424 (1990). As Plaintiffs acknowledge, however, the federal funds that HUD administers were appropriated by an act of Congress. *See* Compl. ¶ 56. In that respect, the Appropriations Clause has been satisfied.

But even if the Appropriations Clause afforded the remedy Plaintiffs seek, they lack standing to assert such an "undifferentiated, generalized grievance about the conduct of government." *Lance v. Coffman*, 549 U.S. 437, 442 (2007) (per curiam). Indeed, the Supreme Court has long held that "[a] citizen may not sue" in federal court "based only on an 'asserted right to have the Government act in accordance with law.'" *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) (citation omitted); *see Lance*, 549 U.S. at 439 ("Our refusal to serve as a forum for generalized grievances has a lengthy pedigree."). Any effort by Plaintiffs here to detach Defendants' alleged noncompliance with certain appropriations statutes from the grant-based remedies that Plaintiffs seek here—*i.e.*, an order requiring specific performance of certain grant provisions—would effectively amount to Plaintiffs merely lodging "a general legal, moral,

ideological, or policy objection to a particular government action," which they lack standing to do. *All. for Hippocratic Med.*, 602 U.S. at 381.

Plaintiffs may counter that they have a "particularized stake" in a challenge to Defendants' alleged noncompliance with appropriations statutes, *Lance*, 549 U.S. at 442, given Plaintiffs' participation in the grant programs. But even if Plaintiffs sufficiently allege that such noncompliance causes them an Article III injury, they fail to plausibly allege that such an injury "is 'likely' to be 'redressed by judicial relief'" here. *Haaland v. Brackeen*, 599 U.S. 255, 292 (2023). As other courts in this district have recently recognized, this Court cannot "specifically order" the federal government "to continue to contract" with specific parties, as such relief would undermine the "Executive's discretion" that "both the Constitution and Congress's laws have traditionally afforded" with respect to "how to spend" appropriated funds "within the constraints set by Congress." *AIDS Vaccine Advoc. Coal. v. Dep't of State*, 770 F. Supp. 3d. 121, 154 (D.D.C. 2025). Rather, "the appropriate remedy" for an allegedly impermissible withholding of congressionally appropriated funds by the Executive Branch is "to order" the agency in question "to 'make available for obligation the full amount of funds Congress appropriated' under the relevant laws." *Id*. (quoting *City of New Haven v. United States*, 634 F. Supp. 1449, 1460 (D.D.C. 1986)). Yet granting that limited remedy here would not address Plaintiffs' claims because it would not result in the administration of specific grants that would disburse funds to Plaintiffs, as opposed to other applicants. That absence of a redressable injury fails to satisfy Article III's standing requirements, *Haaland*, 599 U.S. at 294, and such a "defect[] of standing" requires the dismissal of Plaintiffs' unlawful-withholding claim under Rule 12(b)(1). *Janay v. Blinken*, 743 F. Supp. 3d 96, 103 (D.D.C. 2024).

## IV.    Plaintiffs Have Failed To Show A Separation Of Powers Violation.

Article I of the Constitution confers on Congress the authority to "lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States." U.S. Const. art. I, § 8, cl. 1. Congress therefore may, "[i]ncident to" its spending power, "attach conditions on the receipt of federal funds," *Cnty. of Santa Clara*

*v. Trump*, 250 F. Supp. 3d 497, 530 (N.D. Cal. 2017) (quoting *South Dakota v. Dole*, 483 U.S. 203, 206 (1987), and "Congress can delegate some discretion to the President to decide how to spend appropriated funds" so long as "any delegation and discretion is cabined by [relevant] constitutional boundaries." *Id.* at 531.

That is precisely what has happened here. Congress has authorized HUD to administer certain grant programs, including those at issue in this case. The funding for the grants at issue must be obligated before the end of the fiscal year to prevent any lapses in funding. Plaintiffs' allegations do not establish that HUD has acted outside of that Congressional authority or engaged in "unlawful impoundment." Compl. ¶ 137. Therefore, Plaintiffs have not stated a viable claim for violation of separation of powers.

**V.   Plaintiffs Have Failed To Articulate A Due Process Violation.**

Plaintiffs claim that "HUD's refusal to negotiate second and third-year PEI contracts violates the Due Process Clause because it effectively terminates active PEI grants without notice or process." Compl. ¶ 141. This claim lacks merit for multiple reasons.

First, Plaintiffs have not established a protectable property interest. "The procedural component of the Due Process Clause does not protect everything that might be described as a 'benefit': 'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire'" and "more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Town of Castle Rock v. Gonzalez*, 545 U.S. 748, 756 (2005) (citation omitted). The Supreme Court has identified a narrow set of government benefits, so-called "new property," that are protected under the Due Process Clause. *See Perry v. Sindermann,* 408 U.S. 593 (1972) (tenured teaching position); *Goldberg v. Kelly,* 397 U.S. 254 (1970) (welfare benefits); *see also Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564 (1972) (collecting cases). The Due Process protections afforded to this set of entitlement-like benefits, however, have not been extended to "'ordinary' or 'routine' government contracts." *Gizzo v. Ben-Habib*, 44 F. Supp. 3d 374, 385 (S.D.N.Y. 2014); *see also Redondo-Borges v. U.S. Dep't of Hous. & Urb. Dev.*, 421 F.3d 1, 10 (1st Cir. 2005) ("We have held with a regularity bordering on

the echolalic that a simple breach of contract does not amount to an unconstitutional deprivation of property."); *New Vision Photography Program, Inc. v. District of Columbia*, 54 F. Supp. 3d 12, 29 (D.D.C. 2014) ("The Supreme Court has never held that government contracts for goods and services create property interests protected by due process." (citation omitted)).

The distinction makes sense. As the Second Circuit explained in *S & D Maintenance Co. v. Goldin*, in the new-property line of cases, "the Due Process Clause [was] invoked to protect something more than an ordinary contractual right. Rather, procedural protection [was] sought in connection with a state's revocation of a *status*, an estate within the public sphere characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure[.]" 844 F.2d 962, 966 (2d Cir. 1988). The same logic does not extend to "contractual interests that are not associated with any cognizable status of the claimant beyond its temporary role as a governmental contractor." *Id.* at 967. Indeed, "the doctrinal implications of constitutionalizing all public contract rights would raise substantial concerns[.]" *Id.* at 966. "[C]ourts have resisted application of due-process principles to government contracts because [w]ith scores of millions of government contracts in effect at any point in time, it is unimaginable that all government agencies would be required to provide a hearing before they take any action that is arguably inconsistent with a contract." *New Vision*, 54 F. Supp. 3d at 29 (citation omitted). This Court should refrain from such an unprecedented expansion of the doctrine. And as already stated, such considerations have not imposed any consequence on Plaintiffs to date. Moreover, Plaintiffs do not articulate a policy or procedure causing any alleged deprivation because there is no final agency action, as previously explained. Therefore, Plaintiffs have failed to state a due process claim.

## VI.    The Court Should Defer Production Of The Administrative Record.

In conjunction with this Motion, Defendants have filed a motion for relief from Local Rule 7(n), which requires production of the administrative record simultaneously with the filing of a dispositive motion. D.D.C. L.R. 7(n). Because Defendants' motion to dismiss turns on

purely legal issues and because the motion can be decided on the face of the complaint, an administrative record is not necessary.

## CONCLUSION

For all the reasons discussed herein, the Court should dismiss Plaintiffs' Complaint.

Dated:  July 4, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

LESLEY FARBY
Deputy Branch Director
Federal Programs Branch

*/s/ Heidy L. Gonzalez*
HEIDY L. GONZALEZ
(FL Bar No. 1025003)
*Trial Attorney*
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC  20005
Tel. (202) 598-7409
heidy.gonzalez@usdoj.gov

*Attorneys for Defendants*