IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL FAIR HOUSING ALLIANCE, *on behalf of itself and those similarly situated*, and TENNESSEE FAIR HOUSING COUNCIL,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, and SCOTT TURNER, *in his official capacity as Secretary of Housing and Urban Development*,<br><br>Defendants. | Case No. 1:25-cv-01965-SLS |

### PLAINTIFFS' RESPONSE TO DEFENDANTS' STATUS REPORT

Plaintiffs respectfully submit the following status report in response to Defendants' August 4, 2025 Status Report, ECF 29.

The Department of Housing and Urban Development's (HUD) plan for awarding FY2024 Fair Housing Initiatives Program (FHIP) funds, as outlined in its status report, causes multiple legal violations:

1. Application Due Date

The 23-day application period creates real world harm to potential FHIP applicants. Because of HUD's unjustified and unreasonable delay in obligating FY2024 FHIP funds, many of the fair housing organizations that plan to submit applications are understaffed and under resourced. In its plan, which rests on utilizing the new NOFOs rather than the September 2024

NOFOs, HUD shortens the timeframe to complete applications from the presumed 60 days, 2 C.F.R. § 200.204(b), to just 23 days. By contrast, applicants were given 63 days to respond to the 2024 NOFOs. In order to comply with the Office of Management and Budget regulation, HUD asserts without citation or attachment that HUD's Deputy Secretary has made a finding that exigent circumstances exist for the shortened application period.

HUD acknowledges that the reasons for the exigent circumstance are of HUD's own making, noting that "new leadership" wanted to ensure compliance with new executive orders and to align practice with current administration policies. HUD makes no effort to explain why it required more than five months to conduct this "alignment," leaving just 23 days for organizations to revise and complete new applications. This agency-created emergency is precisely the type of unreasonable delay that the APA prohibits. 5 U.S.C. § 706(1).

HUD suggests that the organizations' work to update applications will be minimal because the changes to the NOFOs are minor. This ignores that it is not simply changes to the NOFOs themselves that create substantial work for applicants to reapply after so much time has elapsed. All organizations will be required to revise their applications to include updated information regarding the organizations' work and other changes over the last eight months since last applying. Indeed, the passage of time since the fall 2024 applications is similar to the one-year gap between two annual applications in a typical grant application process—and updating a previous year's application is a process that HUD has generally recognized takes 60 days, particularly in light of all of the other daily activities of an organization. In addition, the changes to the prompts and to the permitted activities for some of the NOFOs will require alterations to their applications that may be greater than what it typically takes to update one year's application for a new year's application. There is no justification for FHIP applicants to bear the burden

created by HUD's unreasonable delay, unjustified insistence on issuing new NOFOs, and unwarranted creation of exigent circumstances.

2. September 19, 2025 Anticipated Award Date

HUD's anticipated award date of September 19, 2025 is after the Fair Housing Act's deadline for notifying Congress of proposed grants. *See* 42 U.S.C. § 3616a(e), *see also* ECF 24. HUD simply asserts without legal citation that notifying Congress of "the amounts that HUD proposes to obligate for categories of grants under the NOFOs, and the intended terms of the grant agreements" is sufficient to meet the reporting requirement. ECF 22 at 3. It does not explain how this squares with the Fair Housing Act's plain language that "[n]ot less than 30 days before providing a grant or entering into any contract or cooperative agreement to carry out activities authorized by this section, the Secretary shall submit notification of such proposed grant, contract…." 42 U.S.C. § 3616a(e). And while HUD has argued that Plaintiffs do not have standing to enforce this provision, it provides no assurance against a third party or Congress challenging HUD's ability to enter into agreements without complying with the 30-day notification period. HUD's mere assertion that it is in compliance, without any legal support whatsoever, is simply insufficient given the risk it unnecessarily is creating for the approximately $23 million that represents the lifeblood of many fair housing organizations around the country.

The September 19, 2025 award date also leaves insufficient time for HUD to reallocate unawarded funds prior to the obligation date. Historically, HUD has had to reallocate funds because of insufficient applications, unsuccessful applications, or other reasons that result in HUD being unable to allocate in the first round all the FHIP funds that have been appropriated. This year, the likelihood of having to reallocate after the initial award process is complete is substantially heightened. For example, HUD has eliminated the possibility of a single

organization receiving more than one Education and Outreach Initiative (EOI) grant, meaning that there will be fewer applications for EOI grants, as those organizations that applied for multiple grants in 2024 can now only apply for one. Further, HUD's delay in awarding funds has driven at least two organizations out of business that will not be applying for FHIP funds in this new cycle. And the shortened timeframe for applications will likely lead to incomplete or insufficient applications that may not be remediable in the short time period prior to the appropriations deadline.

3. Performance Period Start Date

HUD asserts that the November 1, 2025 anticipated start date noted on the new NOFOs does not accurately portray HUD's plans. HUD does not, however, commit to any date for the start of performance periods, merely stating that it would like the periods to begin as soon as possible. ECF 29 at 4. In the context of an APA claim where Plaintiffs have already shown unreasonable delay by the agency and significant daily harm to the Plaintiffs, *see, e.g.*, ECF 11-3, Rice Decl. ¶¶ 12–15, 27–29, 32–33, hoping to start FHIP awards by November 1 or sooner, without actually committing to anything, is insufficient to remedy the additional delay created by issuing new NOFOs.

* * *

The new NOFO process outlined by HUD in its status report creates continued unreasonable delay in violation of the APA; violates the APA and Constitution by proposing a sequence that precludes compliant obligation of funds prior to the appropriations deadline; and

imposes an extended period of harmful consequences on Plaintiffs. Accordingly, Plaintiffs request that the Court order that:

1. HUD award and obligate FY2024 funds based on the September 2024 NOFOs and applications received in response to those NOFOs;

2. HUD announce FY2024 FHIP awards by identifying the type of award, organizational recipient, and amount prior to August 31, 2025;

3. HUD obligate FY2024 FHIP funds by entering into contracts with the recipient organizations prior to September 30, 2025, with an offered start date of October 1, 2025, for any organization whose prior grant has expired by then;

4. Any unobligated funds unallocated prior to September 30, 2025 remain available for obligation until December 1, 2025; and

5. HUD provide weekly status reports setting forth its progress toward meeting the above requirements until all FY2024 funds are obligated.

Dated: August 6, 2025

Respectfully submitted,

/s/ *Lila Miller*
Lila Miller (DC Bar No. 1643721)
Reed Colfax (DC Bar No. 471730)
Robert Hunter (DC Bar No. 90031794)
RELMAN COLFAX PLLC
1225 19th Street NW, Suite 600
Washington, DC 20036
Tel: (202) 728-1888
Fax: (202) 728-0848
lmiller@relmanlaw.com
rcolfax@relmanlaw.com
rhunter@relmanlaw.com

*Attorneys for Plaintiffs*