**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL FAIR HOUSING ALLIANCE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, *et al.*, <br><br> Defendants. | No. 25-cv-01965-SLS |

**DEFENDANTS' STATUS REPORT**

Pursuant to the Court's August 11, 2025 Order, ECF No. 33, Defendants provide the following information.

*Existing Multi-Year PEI Grantees*

1.      There remain only three existing multi-year PEI grantees for which subsequent year grant agreements still need to be negotiated and executed.[1]

2.      For one of them, negotiations are under way, and the grant agreement should be fully executed by the end of this week.  The other two are on a longer negotiation timeline due to staff turnover as previously reported, ECF No. 22 at 2, and are still on track to have grant agreements executed no later than mid-September.

*FY24 NOFOs*

3.      Data retrieved on August 18, 2025, indicates that HUD has received 29 total applications across the four NOFOs.

---

[1] As previously reported, one multi-year PEI grant was terminated for cause based on an investigation conducted under the previous administration and for reasons unrelated to the allegations in this case.  ECF No. 22 at 2 n.1.  That grantee administratively appealed the termination determination.  If the appeal is successful, the grantee will require a newly negotiated and executed grant agreement in addition to the three indicated in paragraph 1.  HUD anticipates that its appeal determination will be rendered soon.

4.      Before timely submitted applications can be reviewed on the merits, each application must be screened for whether it meets eligibility requirements.  Each NOFO details the requirements for eligibility for funding under that NOFO.  The eligibility screening process entails reviewing submitted applications to confirm the applicants are eligible to receive funding under the NOFOs, which includes a review of the applicant organizations, the completeness of the application, as well as other eligibility criteria listed in the NOFO.  HUD has four employees with the requisite experience to conduct eligibility screening.  Eligibility screening has begun and will be conducted on a rolling basis during the application period.  All initial eligibility determinations will be entered into the system by August 28.

5.      If HUD determines that an applicant is ineligible, HUD will immediately send a letter giving the applicant a short but reasonable period of time to appeal the decision. HUD anticipates offering applicants 48 hours. If the appeal is successful, the application will be added to the larger batch of eligible applications for merit review.  HUD plans to expedite the review of any appeals it receives so that successful applicants will be included in the merits review process.

6.       Prior to beginning the merit review, all eligible applications must be uploaded to the GrantSolutions system, which is a process undertaken by HUD's Grants Management Office. Once applications are uploaded, the contractor undertakes a quality control check to ensure the accuracy and completeness of the uploaded applications. Next, the contractor based on input from HUD, constructs the panels for conducting the review, which must consist of two primary first-line reviewers and a Chairperson.  The applications must be divided among panels by component.  Put differently, panels will review the same type of applications by FHIP component.  This requires close review of the types of applications received, compilation into manageable batches for review, and assignment to panels.   HUD will begin merit review as soon as possible; HUD project that this review could begin as early as August 29.

7.      All reviewers must participate in a two-hour merit review training before the merit review process begins.  Merit review training is scheduled to be completed on August 27.

In HUD's experience, conducting the merit review training close in time to the merit review is most effective.

8.      HUD has assembled 57 confirmed reviewers (30 HUD employees and 27 contractors) to conduct the merit (Technical Evaluation Panel) review of eligible applications on a full-time basis. HUD will add additional reviewers, who will attend the August 27 training, beyond the 57 that have already been confirmed.

9.      Merit review consists of three steps. First, each eligible application undergoes first-line review and scoring from two different merit reviewers. Second, a "Chairperson" reviews the first-line scoring for consistency and accuracy and compiles the final report. Third, the report (including scoring, comments, and alerts) goes to a "Review Director" who performs a quality control review to ensure consistency and accuracy in the merits review process across panels. Once the Review Director is satisfied, the report is accepted, allowing award recommendations to be compiled and submitted to HUD leadership. To avoid a backlog at the Chairperson and Review Director levels, HUD plans to conduct these second- and third-level reviews on a rolling basis. All 57 reviewers assembled can conduct first-line reviews. Chairperson or Review Director reviews are only performed by HUD employees. Chairpersons and Review Directors may also perform first-line reviews for other panels.

10.     HUD has assumed that the volume of applications it will receive for the July 2025 NOFOs will be similar to that of the September 2024 NOFOs—approximately 180 eligible applications, though HUD is prepared to review a greater number of applications if received. Assuming that HUD receives 180 eligible applications, that would mean 360 total first-line reviews to be completed by approximately 57 people, or roughly 6.32 first-line reviews per person. HUD estimates that on average a first-line merit reviewer can review 1 and possibly 2 applications per day. Chairperson and Review Director reviews do not take as long as first-line reviews. Merit review is scheduled to begin no later than September 2 and to be completed by September 17. Thereafter, applicant ranking lists are generated based on the final scores in the system. An FHEO manager will then transmit the award recommendations to HUD leadership.

HUD plans to make award determinations no later than September 22, and will make determinations earlier if possible.

11.     Pursuant to Section 221 of the 2024 Consolidated Appropriations Act, which requires HUD to notify the appropriate congressional committees 3 full business days before announcing an award, HUD plans to notify the committees of HUD's award selections by September 22 or 23.  On September 25 or 26, following this notification, HUD plans to sign obligation letters obligating the funds to selectees.  HUD will promptly notify selectees of their award and will be able to commence grant agreement negotiations.  HUD expects to issue approximately 91 awards.

12.     HUD notes that all awardees will not be eligible for October 1 performance period start dates.  For example, if an awardee has an existing EOI grant for which the performance period ends after October 1, that awardee would not be able to commence performance for a new EOI grant under the same component until after the existing period of performance ends. Periods of performance for two substantially similar grants may not overlap.

Dated: August 18, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JOSEPH BORSON
Assistant Branch Director
Federal Programs Branch

*/s/ Heidy L. Gonzalez*
HEIDY L. GONZALEZ
(FL Bar No. 1025003)
*Trial Attorney*
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.

4

Washington, DC  20005
Tel. (202) 598-7409
heidy.gonzalez@usdoj.gov

*Attorneys for Defendants*