**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL FAIR HOUSING ALLIANCE, *et al.*, | |
| Plaintiffs, | |
| v. | No. 25-cv-01965-SLS |
| UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, *et al.*, | |
| Defendants. | |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO SUSPEND LAPSE DATE FOR FOURTEEN DAYS

Plaintiffs filed this lawsuit to request that the Court "[d]eclare HUD's refusal to administer FHIP grants unlawful" and "[o]rder HUD to administer FHIP awards." ECF No. 1 at 34. Defendants have at all times maintained that the only requirement imposed by the 2024 Consolidated Appropriations Act is that funds be obligated by September 30. ECF No. 24 at 3 ("With two months left until the September 30, 2025, deadline, the Court orders only that the agency comply with its statutory obligations and that it come up with a detailed plan to do so."). Defendants have worked hard to comply with the September 30 obligation deadline, and as of this filing, have obligated all FHIP funds under the FY2024 NOFOs.[1]  *See* ECF No. 55. In short, Defendants have done what they told Plaintiffs and this Court they would do. Because all the FY2024 FHIP funds that are the subject of this litigation have been obligated, and for the reasons

---

[1] Plaintiffs' Motion notes that the FY2024 Consolidated Appropriations Act appropriated approximately $86 million for fair housing activities. Pls' Mot. at 2. But Congress only made $56 million of that appropriation "available for FHIP." *See* Joint Explanatory Statement to the Transportation, Housing and Urban Development, and Related Agencies Appropriations Act, 2024, at 1, 50, H.R. 118-154, Div. L, Title II, 118th Cong (2023), *available at* https://docs.house.gov/billsthisweek/20240304/FY24%20THUD%20Conference%20JES%20scan%203.2.24.pdf.  Congress appropriated the other approximately $30 million to other programs, and HUD cannot spend those funds on FHIP. *Id.* at 50.

herein, the Court should not suspend the Congressionally mandated September 30 lapse date as Plaintiffs propose.

> **I.        Because All FY2024 FHIP Funds Have Been Obligated, The Court Does Not Have Statutory Or Equitable Authority To Suspend The Lapse Date.**

Defendants re-incorporate their arguments that 31 U.S.C. § 1502(b) does not provide a statutory basis to extend the period of availability for the appropriations at issue in this case. *See* ECF No. 15 at 12 n.1. Specifically, Section 1502(b) is inapplicable here because the FY2024 Consolidated Appropriations Act does not contain any "provision of law requiring that the balance of [the FY2024 FHIP] appropriation or fund *be returned to the general fund of the Treasury* at the end of the" availability period. *See* 31 U.S.C. § 1502(b) (emphasis added). Despite its clear language regarding applicability, even if Section 1502(b) were read to apply to all lapses in funding —which the government contests—no funds will lapse here: all FY2024 FHIP funds have been obligated prior to lapse, and as a result, section 1502(b) is wholly inapplicable. In other words, there are no *unobligated* funds whose availability will lapse at the end of the Fiscal Year. Plaintiffs' requested relief thus has no basis in law or practice.

Perhaps recognizing the infirmity of their Section 1502(b) position in this context, Plaintiffs now appear to rely mostly (if not entirely) on the Court's "equitable authority – not Section 1502(b) in isolation – to hold open the budgetary period." ECF No. 53 at 3. But Plaintiffs' equitable authority argument is foreclosed by *City of Houston v. Dep't of Hous. & Urban Dev.*, 24 F.3d 1421 (D.C. Cir. 1994), which Plaintiffs cite. *See id.*

In *City of Houston*, the D.C. Circuit emphasized that "the equitable exception is narrow," and that "[i]t is a well-settled matter of constitutional law that when an appropriation has lapsed or has been fully obligated, federal courts cannot order the expenditure of funds that were covered by that appropriation." *City of Houston*, 24 F.3d at 1424. The Court further noted that "this circuit's case law unequivocally provides that once the relevant funds have been obligated, a court cannot reach them in order to award relief." *Id.* at 1426–27 ("Funds appropriated for an agency's use can become unavailable if the appropriation lapses; [or] if the funds have already

been awarded to other recipients"). The Court ultimately held that plaintiff's claim was moot because HUD had "obligated" all relevant funds. *Id.* at 1427.

Here, too, HUD has already obligated the FY24 FHIP funds in question. Accordingly, the Court's equitable authority does not permit the action Plaintiffs request.[2]

## II.    Even If The Court Had Authority To Grant The Equitable Relief Requested, The Court Is Not Required To Grant It And Should Not Grant It Under These Circumstances.

Equitable considerations also weigh against granting Plaintiffs' untimely and prejudicial request. First, although Plaintiffs initially asserted that FHIP NOFO applicants are "harmed by HUD's inaction and delay, and are continuing to be harmed every day", ECF No. 18 at 7, they now request an order that would call into question the validity and reliability of the obligation letters that were just issued, and that would impose impediments to the forthcoming grant negotiation phase. This request necessarily prejudices non-Plaintiff awardees and the individuals served by those awardees who would experience uncertainty during Plaintiffs' purported review of HUD's award determinations. Plaintiffs suggest, without any explanation, that awardees will still be able to negotiate and execute grant agreements with HUD. *See* Pls' Mot. at 2. But Plaintiffs do not explain how HUD could execute binding contractual agreements with awardees under the cloud of a suspension order that could ultimately preclude HUD from making payments to those awardees.[3]

---

[2] *City of Houston* is clear that "even if a plaintiff brings suit before an appropriation lapses, this circuit's case law unequivocally provides that once the relevant funds have been obligated, a court cannot reach them in order to award relief." *City of Houston*, 24 F.3d at 1426. The opinion appears to use the terms "distributed" and "disbursed" synonymously with "obligated." To construe *City of Houston* otherwise, *i.e.*, to require an agency to have distributed obligated funds before determining that a court lacked power to award relief, would re-write the opinion and not give effect to its otherwise repeated use of the term "obligated." *See id.* at 1424 ("It is a well-settled matter of constitutional law that when an appropriation has lapsed or has been fully *obligated*, federal courts cannot order the expenditure of funds that were covered by that appropriation." (emphasis added)).

[3] Such disruption could also invite counterchallenges by other awardees to the detriment of NFHA members, and it is not clear the extent to which Plaintiffs' Motion is actually consented to by all NFHA members. At various points in the litigation, Plaintiffs' counsel asked counsel for

Second, the timing and unreasonableness of Plaintiffs' request also weighs against granting it. Plaintiffs stated at the September 29 status conference and in their Motion that this last minute lapse suspension request is attributed to the fact that they did not receive notice of award selection by close of business on September 26, which would have afforded 2 business days (or 4 calendar days) to review the awardee organizations against the statutory eligibility criteria and bring APA litigation if necessary. *See* Pls' Mot. at 5. Plaintiffs' assertion that they otherwise would have been able to complete their review and complete APA award challenges before September 30 only if HUD had provided the awards by end of day on September 26 is neither plausible nor credible. To be clear, HUD provided all projections about when it would finalize FY2024 FHIP obligations in good faith, while maintaining that it has until September 30 to finalize those obligations. Plaintiffs at no point suggested that HUD was required to announce award selections at some point prior to September 30 to provide an opportunity for challenges to award determinations.

Third, Plaintiffs' request lacks the kind of urgency that could potentially justify, as the Court noted, such an extraordinary request. If it is true that Plaintiffs originally believed they only needed 2 business days to review award selections (before knowing how many non-NFHA members would receive awards), then they should not need more than 1 business day now that they know that most of the awardees were issued to Plaintiffs and their members (83 of the 106 awardees). The breakdown by NOFO component is as follows:

- EOI-TCT: The one awardee is a NFHA member.

- FHOI-ENOC: The two awardees are NFHA and an NFHA member.

- FHOI-CDC: Of the 12 awardees, only 1 is not a NFHA member.

- EOI-NMC: Of the 2 awardees, only 1 is not a NFHA member.

- PEI: Of the 26 awardees, only 7 are not NFHA members.

---

HUD to provide information about NFHA members, suggesting that Plaintiffs' counsel might not be in contact with those members. Thus, the instant request also raises potential conflict of interest dilemmas.

- EOI-G: Of the 63 awardees, only 14 are not NFHA members.

HUD sent Plaintiffs the list of awardees just before 8 a.m. ET today, with Plaintiffs and their members highlighted (to the best of HUD's knowledge based on the NFHA website members directory) to facilitate Plaintiffs' review of the non-NFHA awardees. HUD asked Plaintiffs to complete that review before the instant filing, by 11 a.m. At 11 a.m., Plaintiffs had asked a question about one awardee—Veterans Center, Inc.[4]—and stated "Otherwise, at this time, we have not identified any further eligibility concerns. We will continue to review and touch base if that changes." This follows Plaintiffs' statements in the September 29 hearing that they are not sure there will be a need for any such award challenges, and that they are seeking this extraordinary relief on a 'just in case' basis.[5]

Moreover, Plaintiffs do not have sufficient need for this drastic relief given the alternative recourses available to them. Plaintiffs' Motion recognizes that an improperly denied applicant can receive a corrective award via a funding source other than the FY24 FHIP appropriation, such as the FY25 FHIP funding appropriation, assuming the applicant is eligible under such other funding source. *See* Pls' Mot. at 2. Additionally, in the September 29 meet and confer, Plaintiffs pointed to *City of Houston* as a reason why they are required to seek the instant relief; Plaintiffs claim that any post-award challenge would be a money damages claim not available under the APA. *See* 24 F.3d at 1428. In other words, Plaintiffs recognize that they could seek damages in the Court of Federal Claims under the Tucker Act.

*     *     *

In short, all FY2024 funds have been obligated and there is no basis to extend the lapse deadline for 14 days. None of the steps Plaintiffs claim they would take within those 14 days have any bearing on the lapse deadline. HUD has been committed to finalizing obligations prior

---

[4] *See* https://www.vetscenterinc.org/fair-housing/.

[5] Also, while Plaintiffs' Motion should not be granted at all, it is worth noting that by Plaintiffs' own logic and references to "award-specific requests related to the appropriation deadline," *see e.g.*, Pls' Mot. at 5, there is no need or basis for suspending the appropriation deadline for the 83 of 106 awards that were issued to Plaintiffs and their members.

to the September 30 lapse and it has satisfied that commitment.  HUD aims to proceed to the

grant negotiation phase imminently, and it objects to any interference with that process.


Dated: September 30, 2025


                                              Respectfully submitted,

                                              BRETT A. SHUMATE
                                              Assistant Attorney General
                                              Civil Division

                                              JOSEPH BORSON
                                              Assistant Branch Director
                                              Federal Programs Branch

                                              */s/ Heidy L. Gonzalez*
                                              HEIDY L. GONZALEZ (FL Bar No. 1025003)
                                              *Trial Attorney*
                                              U.S. Department of Justice,
                                              Civil Division, Federal Programs
                                              1100 L Street, N.W.
                                              Washington, DC  20005
                                              Tel: (202) 598-7409
                                              Email: heidy.gonzalez@usdoj.gov

                                              *Attorneys for Defendants*